443 So.2d 613 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Glenn Allen HEBERT, Defendant-Appellant.
No. CR83-164.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1983.
Writ Denied January 6, 1984.
*614 L. Paul Gianfala, Lafayette, for defendant-appellant.
Jack Derrick Miller, Asst. Dist. Atty., Acadia Parish, Crowley, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and CUTRER, JJ.
CUTRER, Judge.
The defendant, Glenn Allen Hebert, was indicted for aggravated rape, in violation of LSA-R.S. 14:42. Defendant's jury trial resulted in a verdict of guilty as charged. The trial judge imposed the mandatory statutory penalty of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant appealed his conviction on the basis of eleven assignments of error. Two of the assignments of error were abandoned and will not be considered by us. The remainder are submitted for consideration.

*615 FACTS
The incident upon which the defendant was convicted occurred during the early morning hours of April 26, 1981, as the sixteen year old victim, Carla Jean Tupper, and defendant were returning to Crowley in an automobile driven by Carla's boyfriend, Wayne Courville.
On Friday, April 24th, Courville had introduced Ms. Tupper to his friend, the defendant. Courville, Ms. Tupper and defendant decided to do some partying by patronizing some of the local night clubs the following night.[1]
The partying began on the evening of April 25th (Saturday). There were initially three other individuals with the defendant, Courville and Ms. Tupper. However, several hours and several lounges later, the party had been reduced to the latter three. While they were at a lounge in Duson, Louisiana, the defendant, according to Ms. Tupper, made her very uneasy by his constant staring at her and by his remarks that he wished that he had someone like her. At approximately 4:00 A.M. (April 26th), the trio were returning to Crowley, when defendant asked Courville to stop the car on the side of the road in order for him to respond to a call of nature. Courville stopped and both he and defendant went to the rear of the car for the same purpose. By this time the party-goers had consumed an undetermined amount of beer and had smoked several "joints" of marijuana. Ms. Tupper testified that she was waiting in the front seat of the car for the two to return, when the defendant suddenly appeared at the front passenger side of the vehicle. The defendant then pushed her on her back and ripped off her pants, threatening to kill her if she refused to submit to him sexually.
According to Ms. Tupper, the defendant then proceeded to rape her. Courville had remained behind the car after defendant proceeded to the front of the car. After hearing Ms. Tupper's cries for help, Courville went around to the driver's side of the car and attempted to pull the defendant away from the victim. Defendant was a large man physically. Courville, being a small man, was unable to remove defendant. Courville then ran for help to a nearby house.
When the defendant heard Courville returning to the car, he struggled briefly with the victim, who was able to free herself and jump from the car. Hebert then fled the scene in Courville's car. Ms. Tupper's testimony was corroborated by Courville's; the State also produced the testimony of the two men from whom Courville had sought aid and who had called the sheriff's office.
The defendant's version of what occurred naturally differed from the above-mentioned account, and it was, obviously rejected by the jury. Defendant testified that the victim had been promising him a "good time" all evening and that she was fulfilling that promise when, for a reason unknown to him, she began screaming "Rape." He stated that her cries caused him to panic, that he pushed her from the car and that he then fled in Courville's car. The defendant was arrested several hours later in Lafayette.
ASSIGNMENT OF ERROR NUMBER 1[*]
By this assignment the defendant alleges that the trial court erred in allowing the State, just before the beginning of trial, to notify the defendant of its intention to introduce an oral inculpatory statement made by the defendant upon his arrest. The defendant contends that such a short period of notice violated the spirit and intent of Article 768 and 2 of the Code of Criminal Procedure.[2]
*616 As the record fails to indicate that the defendant had access to any pretrial discovery, art. 768 requires the State to provide the defendant with notice of its intent to use his oral inculpatory statement prior to the beginning of the State's opening statement. In the instant case, the notice was given on July 15, 1982, prior to the selection of the jury. The State's opening statement was not given until the next dayJuly 16th. The statutory protections imposed by art. 768 were, therefore, clearly complied with by the State.
We choose, however, to decide this issue, not on the grounds of adequate compliance with C.Cr.P. art. 768 but, on the basis that the defendant failed to timely object as required by LSA-C.Cr.P. art. 841.[3] The record reflects that the defendant failed to raise his notice objection either at the time notice was given or at the time his statement was introduced.[4] This issue, being raised for the first time upon appeal, is not, therefore, properly before us. State v. Williams, 346 So.2d 181 (La.1977). This assignment lacks merit.
ASSIGNMENT OF ERROR NUMBER 2
Defendant contends that the trial court erred in failing to allow him to fully and completely cross-examine the victim on her prior sexual conduct and reputation for chastity. Defense counsel, in his brief, urges that the trial court indicated, early in the proceedings, that the victim's prior sexual conduct and reputation for chastity were not to be inquired into by the defendant.
In response to the State's motion in limine based upon LSA-R.S. 15:498,[5] the trial judge stated that he would not make a ruling on such evidence prior to trial. He informed counsel that he would rule on such issues as they may arise during trial.
Also, defense counsel was allowed at trial to question Ms. Tupper about the fact that she was living with Wayne Courville. The defense did not carry its questioning any further. It is clear that the trial judge had not automatically ruled against such testimony prior to trial. Defense counsel simply did not seek to elicit any further testimony on the subject. This assignment has no merit.
ASSIGNMENT OF ERROR NUMBER 4
Defendant alleges that the trial court erred, on the basis of LSA-R.S. 15:451, in allowing into evidence the inculpatory statement made by the defendant. LSA-R.S. 15:451 requires the State prior to its introduction into evidence of any inculpatory statement to affirmatively show that the statement "was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises."
Pursuant to R.S. 15:451, a hearing was held outside the presence of the jury to establish the voluntariness of the defendant's *617 statements to the arresting officers. Deputies Johnny Meyer and Wayne Melancon stated that the defendant, after being informed of his Miranda rights, had freely spoken with the officers, but he had refused to sign anything.[6]
Determinative to the disposition of this issue is the following colloquy between the trial judge and defense counsel occurring after the State had introduced evidence of the factual circumstances surrounding the taking of defendant's statement:
"BY THE COURT:

Alright. Let' ... Let's bifocate [sic] the problem as it were.

Problem Number One (1) with respect to the admissibility vel non of the statement as far as it being a free and voluntary statement as such. You have an objection now upon the basis predicated upon one (1) of thoseone (1) of those requisites, Mr. Defense Counsel?
BY MR. BEARB:

No, Your Honor, I don't have any objection."
This express failure to object on the basis of R.S. 15:451 precludes consideration of the matter upon appeal. LSA-C.Cr.P. art. 841. This assignment is without merit.
ASSIGNMENT OF ERROR NUMBER 5
Defendant by this assignment alleges that reversible error occurred when the trial judge allowed Deputy Meyer to make an "improper comment" in the presence of the jury. Defendant argues that Meyer's response to certain questions upon both direct and cross-examination improperly attempted to establish the defendant's bad character and that he had committed offenses other than those upon which he was being tried.
The questions and the replies complained of are set forth below:
"Q. What did he ... What did you tell him after he said he understood his rights but didn't want to sign anything? And I want you to use the exact words.

A. Knowing Glenn ... I know Glenn like that. I had dealt with him before....
Q. He wasn't very talkative, was he?

A. Just like usual. Like I've talked to him several times before."
On this appeal defense counsel argues that R.S. 15:481[7] and R.S. 15:495[8] were violated by Deputy Meyer's remarks which may be inferred to have been reference to past acts of misconduct by the defendant. The statements by Meyer were clearly unresponsive to the questions asked of him and are, at most, ambiguous references to other crimes by the defendant.
This issue has not been properly preserved for appeal, however, as no contemporaneous "other crimes" objection was raised at trial. State v. Rochon, 393 So.2d 1224 (La.1981); LSA-C.Cr.P. art. 841. Nor did the defense, pursuant to LSA-C.Cr.P. art. 771, ever request the jury to be admonished by the trial judge concerning Meyer's remarks.[9] Article 771 mandates a request *618 for admonishment by the trial judge. There is, therefore, no reversible error when an admonishment is not provided in the absence of a request for same. State v. Tribbet, 415 So.2d 182 (La.1982). There is no merit to this assignment.
ASSIGNMENT OF ERROR NUMBER 6
Defendant contends the trial court erred in allowing the district attorney to cross-examine the defendant about alleged other crimes on the basis that it was to establish the defendant's state of mind.[10] The transcript indicates that defense counsel objected to this line of questioning by the State on the grounds that it called for a legal conclusion by the defendant. On appeal, defense counsel urges that the testimony was in contravention of LSA-R.S. 15:481 and LSA-R.S. 15:495, supra. Defense counsel, at trial, did not object to the testimony on the grounds that it violated these statutes. LSA-C.Cr.P. art. 841 precludes consideration of an objection upon appeal when the basis for that objection was not first brought to the trial judge's attention in order to allow him to cure the alleged defect. State v. Feeback, 414 So.2d 1229 (La.1982).
In any event, defendant's objection is without substance as testimony had been given of the fact that defendant had served time in Angola. This assignment lacks merit.
ASSIGNMENT OF ERROR NUMBER 7
Defendant alleges that reversible error occurred when the trial judge allowed the district attorney to cross-examine the defendant regarding his failure to categorically deny to the arresting officer that he had committed the rape at issue. The defense argues that this questioning violated his privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution and as interpreted by the United States Supreme Court in Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).
The issue of whether the prosecutor impermissibly referred to the defendant's decision to invoke this privilege against self-incrimination was never raised by objection or otherwise at the trial level, and it is well settled that it may not now be raised. State v. Webb, 419 So.2d 436 (La. 1982); LSA-C.Cr.P. art. 841. The defendant has, accordingly, waived his objection, and this assignment has no merit.
ASSIGNMENT OF ERROR NUMBER 8
The defendant argues by this assignment that the trial court erred in allowing the district attorney to ask the defendant on cross-examination whether he had threatened anyone concerning the present case. The question posed by the State and the defendant's answer are as follows:
"Q. Haven't you told people that you intend to obtain some revenge in this matter? Think about that good now.

A. It all depends what was said and to who [sic]."
The State never attempted to follow up on this line of questioning, through the use of testimony or otherwise.
Had the defendant been prejudiced by the State's question, his proper procedural vehicle would have been a request for the *619 trial judge to admonish the jury to disregard the prejudicial question. LSA-C.Cr.P. art. 771.
No objection to the question was made at the trial level, nor was there a request for an admonishment to the jury. Defendant has, therefore, waived any objection upon appeal. This assignment is without merit.
ASSIGNMENT OF ERROR NUMBER 10
Defendant contends that reversible error was committed by the trial judge's denial of the jury's request to view, during its deliberations, a "chart" used by the prosecutor in his closing argument.[11]
The appropriate codal provision is LSA-C.Cr.P. art. 793, which states as follows:
"A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict."
The "chart" requested by the jury is not in the record, therefore, we could not rule upon whether the trial court abused its discretion. We do not find it necessary to make such a ruling because no contemporaneous objection was made to the trial judge's ruling, and it is, thereby, not before us on appeal. LSA-C.Cr.P. art. 841. There is no merit in this assignment.
ASSIGNMENT OF ERROR NUMBER 11
Defendant's final assignment alleges that the trial court erred in denying his motion for a continuance made less than one week prior to the beginning of defendant's trial. The record fails to indicate that a motion for continuance was ever made by defense counsel, but, in denying a motion to withdraw by defendant's retained counsel, the trial judge ruled that a continuance on the grounds set forth in the motion to withdraw was also denied. We shall, therefore, consider the merits of defendant's allegations.
The defendant was initially provided with two appointed attorneys on May 13, 1981. On March 31, 1982, Sidney P. Landry, Jr., retained by the defendant, was enrolled as defendant's counsel of record.[12] However, on Friday, July 9, 1982, a hearing was held on Mr. Landry's motion to withdraw as defendant's counsel due to the defendant's failure to pay Mr. Landry's fee.[13] At this time the trial was set to begin on Wednesday, July 14th.
In his ruling the trial judge denied Landry's motion to withdraw from the case as it was filed so close to the trial date that to allow the withdrawal would have the effect of setting the trial date aside. He also stated that a continuance on these grounds was denied.
At the motion for withdrawal, defendant was represented by Mr. Caliste Beard. Mr. Beard, along with Mr. Landry, represented the defendant at trial.[14]
We cannot find that the trial court, in denying the motion for withdrawal and continuance, abused his discretion under the instant facts, nor has there been any *620 showing that the defendant was prejudiced. Accordingly this assignment lacks any substance or merit.
The defendant's conviction and sentence are herein affirmed.
AFFIRMED.
NOTES
[1] Courville testified that he and defendant had become acquainted when they were serving time at Angola. No objection was made to this testimony.
[*] Defendant is represented on this appeal by a newly-appointed counsel.
[2] LSA-C.Cr.P. art. 768 provides:

"Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."
LSA-C.Cr.P. art. 2 provides:
"The provisions of this Code are intended to provide for the just determination of criminal proceedings. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable delay."
[3] LSA-C.Cr.P. 841 provides:

"An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
"The requirement of an objection shall not apply to the court's ruling on any written motion."
[4] Defendant did object to the relevancy of the inculpatory statements and to any reference in them to other crimes committed by the defendant. However, it is well established that a new basis for an objection may not be raised upon appeal. State v. Feeback, 414 So.2d 1229 (La. 1982).
[5] LSA-R.S. 15:498 provides:

"Evidence of prior sexual conduct and reputation for chastity of a victim of rape or carnal knowledge shall not be admissible except for incidents arising out of the victim's relationship with the accused."
[6] The trial judge did not expressly rule that the statements were freely and voluntarily given, but his decision that they were admissible into evidence was an implicit ruling on this issue, as the State had initially requested the matter to be heard on the grounds of LSA-R.S. 15:451.
[7] LSA-R.S. 15:481 provides as follows:

"The state is permitted to introduce testimony of the bad character of the accused only in rebuttal of the evidence introduced by him to show good character."
[8] LSA-R.S. 15:495 states:

"Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein."
[9] LSA-C.Cr.P. art. 771 reads as follows:

"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."
[10] The prosecuting attorney's questions focused on the defendant's knowledge of the elements of the crime of carnal knowledge of a juvenile. LSA-R.S. 14:80. There was the intimation that the defendant had been previously involved in such a crime.
[11] In brief, defendant says that the "chart" contained the charged crime, its elements and responsive verdicts. The record does not contain such a "chart."
[12] Apparently defendant's two appointed counsel were withdrawn, although the record only reflects that one of them was officially withdrawn as counsel of record.
[13] Mr. Landry's motion was originally filed on July 6, 1982.
[14] Apparently Mr. Beard was retained by the defendant, anticipating Mr. Landry's withdrawal. Mr. Beard was formally enrolled as counsel of record on the day of trial, July 15th. Both Beard and Landry were present during defendant's trial, although the former appears to have conducted the defense. Upon this appeal, defendant is represented by another (appointed) counsel.