MARVIN, Chief Judge.
Lonnie Eugene Thompson, presently age 34, appeals his convictions and consecutive sentences that total 20 years at hard labor of two counts for molestation of his then 11-year-old stepdaughter. LRS 14:81.2 C.
He complains that a mistrial should have been granted because he was not given notice that video taped testimony of his victim would refer to his abuse of other children. He also complains that his sentences that total 20 years (10 years on each of the two counts, to run consecutively) are excessive and were imposed with little or no regard for CCrP Art. 894.1 guidelines.
We affirm.
FACTS
In early 1987, Thompson’s wife awoke in the middle of the night and entered her living room, finding Thompson undressed and sitting in a rocking chair with her 11-year-old daughter in a nightgown sitting on the floor in front of him. The child’s panties were nearby on the floor. Mrs. Thompson immediately ordered the child to bed, questioning her about the incident after dawn. Mrs. Thompson and her daughter did not immediately report the incident because they both were afraid of Thompson, who was 6’2” and weighed 307 pounds. Mrs. Thompson and her children subsequently left Thompson when he whipped one of her other children with a plunger. Thompson then, returned to his family home in Missouri where he was incarcerated for a short time for probation violation.
Thompson’s stepdaughter later told a cousin about Thompson’s conduct. When Thompson returned to Louisiana from Missouri in 1988, his past conduct with the stepdaughter again was discussed and was eventually learned by an aunt and a family friend whom the stepdaughter called “grandmother.” The “grandmother” contacted juvenile authorities. An interview of the stepdaughter was video taped in 1988 by authorities.
In the video taped interview the child disclosed that she had been sexually molested by Thompson on two occasions several months apart in 1986 and early 1987. She said that the first incident occurred in 1986 when Thompson called her to the bedroom while her brothers were playing outside, ordering her to take off her clothes. She said when she initially refused, Thompson said, “You’re going to do it anyway.” She obeyed. Thompson placed her on the bed and, over her protests, put his finger and then his tongue in her vagina. She *595 cried during the ordeal, which ceased when one of her brothers entered the home.
On the second incident in 1987, Thompson came into her bedroom late one night after he had been drinking. He ordered her to the living room where he told her to take off her panties. She said when she refused, that Thompson said, “Yes, you’re going to do it ... take them off.” When she obeyed, Thompson ordered her to perform oral sex on him. When she hesitated, he manually took her head and forced her mouth to his penis. After a few moments, he released her head and then took her hand, forcing her to masturbate him. It was shortly after this incident that Mrs. Thompson awoke and entered the living room.
As we have noted, Thompson, who is called “Hoss,” is 6’2” tall and weighs 307 pounds. In the 1988 video-tape, his then 12-year-old stepdaughter appears to be short, no more than five feet tall, and thin, about 100 pounds. The stepdaughter was reluctant to testify at trial.
By an amended answer to discovery on the first day of the trial, the State notified Thompson of its intent to play the video tape to the jury. The video tape was played before the jury the next day. In the taped interview the stepdaughter mentioned that she had heard that Thompson had been jailed for abusing his other children. After the tape was played Thompson complained that the stepdaughter had mentioned “other crimes evidence” of which he should have been given notice.
ASSIGNMENT ONE
Thompson did not object to the video tape being played to the jury in lieu of the stepdaughter’s testimony. He makes no assignment of error in that regard.
After the tape had been seen and heard by the jury Thompson moved for a mistrial, complaining that he was denied a fair trial because he was not given notice of the State’s intent to offer other crimes evidence as required by La.C.E. Art. 1103 and State v. Prieur, 277 So.2d 126 (La.1973). He assigns, as error, the denial of his motion for mistrial.
After reviewing the State’s notice to Thompson of its intent to play the video tape to the jury, the court denied Thompson’s motion for a mistrial and offered to give the jury a limiting instruction about the effect of other crimes evidence. Thompson declined the offer.
The trial court reasoned that Thompson had access to the tape before it was played and should have objected before the tape was played. We agree.
The alleged error was not properly presented or preserved in the trial court. In any event we would find the court correctly denied a mistrial under the circumstances. CCrP Art. 841.
Thompson does not specifically address the merits of this procedural bar in his brief but insists, as he did below, that he was denied a fair trial because the State did not give notice of its intent to offer other crimes evidence as required by La. C.E. Art. 1103 and State v. Prieur, supra.
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. CCrP Art. 841. The trial court must be given an opportunity to cure any error that affects the integrity of the trial. State v. Marcell, 320 So.2d 195 (La.1975).
An objection made after the evidence is before the jury comes too late for the trial court to cure or avoid the error. State v. Bretz, 394 So.2d 245 (La.1981), U.S. cert, denied. There, an objection to questions about defendant’s marital status and relationship to a witness that was made after the witness had answered was held to have come too late.
A defendant cannot complain on appeal that the State was allowed to give belated notice of its intent to offer an incul-patory statement when he made no objection either when the notice was given or when the inculpatory statement was introduced. State v. Hebert, 443 So.2d 613 (La.App. 3d Cir.1983), writ denied.
A defendant cannot complain on appeal that a mistrial should have been grant *596 ed because he was not given notice of the State’s intent to use inculpatory statements when he did not object to cross-examination about his inculpatory statements in the trial court. In State v. Major, 476 So.2d 540 (La.App. 1st Cir.1985), reversed in part, 485 So.2d 57 (La.1986).
The appellate court reasoned that Major was entitled to notice but held that any error in the denial of mistrial was not preserved for consideration on appeal because that defendant failed to timely object. The court noted that defense counsel objected only after the State had completed its cross-examination. The court correctly reasoned that the trial court should have been given an opportunity to cure the error and that defendant was not denied a fair trial, because any prejudice to him was attributable to his tardy objection.
To allow review of errors not timely urged in the trial court would permit the defendant to gamble for a reasonable verdict and then, after conviction, resort to appeal for another “roll of the dice.” Such practice would congest the courts of appeal with errors which should or could have been corrected at the trial level. The abridgment of such a practice by the contemporaneous objection rule of CCrP Art. 841 does not infringe on a defendant’s constitutional right to appeal, even if it is assumed that defendant’s counsel was careless or incompetent. Relief in such circumstance is obtained by a PCR application specifically alleging ineffective assistance of counsel. Marcell, supra.
Here, Thompson had access to the video tape one day before it was admitted. He did not then attempt to review the contents of the tape, did not seek a recess for that purpose the next day, and did not object to the contents of the tape before it was played. His motion for mistrial came only after the tape was played. His motion for mistrial is and was founded only on the grounds of lack of notice about other crimes evidence referred to by the stepdaughter in the tape. A timely objection to the tape or its content would have allowed the trial court either to require the State to excise other crimes evidence or, if the evidence was found admissible, to grant Thompson a continuance and time to counter or explain the evidence.
In response to his earlier discovery, the State had given Thompson a copy of his rap sheet. The rap sheet specifically refers to his second degree assault conviction in Missouri and his being placed on five years probation in January 1984. Our review of the PSI report reveals that this is the other crimes evidence (his abuse of his other children) which the stepdaughter referred to and about which Thompson says he should have been notified.
Thompson was initially charged with child abuse in Missouri, but that crime was reduced to assault class D. The facts underlying the crime, as shown in the PSI, indicate that Thompson placed the hands of his then stepchildren over a fire to teach them not to play with fire. The rap sheet shows that Thompson pleaded guilty to the lesser crime and was placed on probation in Missouri in 1984.
Under these circumstances and even assuming the assignment is before us, we must conclude that Thompson’s assertions of surprise, prejudice and unfairness have no merit. The applicable article is CCrP Art. 775:
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
Thompson’s testimony denies any sexual contact with his stepdaughter but suggests that if such did occur he would not remember because he was drinking heavily and abusing alcohol during that period in which the two incidents with his stepdaughter occurred.
In summary, we hold that because Thompson did not timely object, the error complained of is not properly before this court. The denial of the mistrial, moreover, did not surprise, prejudice, or result in unfairness to Thompson. CCrP Art. 775.
*597 THE SENTENCE
Thompson claims that his sentence is excessive and that the court did not comply with the guidelines as set out in CCrP Art. 894.1. Again we cannot agree.
The record reflects that the trial court fully complied with Art. 894.1 guidelines and articulated reasons for the sentence. The trial court noted that Thompson is a second felony offender who has a lengthy rap sheet which includes a misdemeanor harassment conviction, a DWI conviction, a class D assault conviction and speeding charges. The trial court noted that the Missouri class D assault related to child abuse, and concluded that the child molestation conduct was “very serious” in that it resulted in severe emotional problems to the victim.
The trial court considered in mitigation that Thompson dropped out of school in the 9th grade and thereafter earned his GED, that he was honorably discharged from the U.S. Navy and that he had been treated for mental problems in the past. The court considered the time Thompson had been in jail and the fact that Thompson had job skills training, having successfully completed two schools for cross-country driving. The court also noted that Thompson had completed a prior probation but found that at age 34, Thompson was not a youthful offender who had benefited from probation. The court compared Thompson’s attitude with that of his victim, noting Thompson’s denial and “explanation” of his conduct. The court found that the victim continued to suffer from emotional problems.
The trial court found the offense intolerable to society and imposed two 10-year sentences to run consecutively, while noting that the maximum penalty was 15 years for each count [and a fine of not more than $10,000]. LRS 14:81.2 C.
CONCLUSION
The sentences imposed are below the maximum. The sentences are not excessive in light of the serious nature of the crime, the defendant’s prior record, the defendant’s lack of remorse and the harm done to the victim. The sentences are not disproportionate to defendant’s conduct and do not shock our judicial conscience. We do not find them excessive.
DECREE
Thompson’s convictions and sentences are
AFFIRMED.