477 So.2d 177 (1985)
STATE of Louisiana, Appellee,
v.
Frank Curtis COLLATT, Appellant.
No. CR85-146.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1985.
Rehearing Denied November 4, 1985.
*179 Bertrand De Blanc, Sr., Darrell Hartman, Abbeville, for defendant-appellant.
Calvin Woodruff, Asst. Dist. Atty., Abbeville, for plaintiff-appellee.
Before DOMENGEAUX, FORET and YELVERTON, JJ.
FORET, Judge.
Defendant, Frank Curtis Collatt, was charged by bill of information with two counts of attempted second degree murder pursuant to LSA-R.S. 14:27 and 14:30.1. He pleaded not guilty and not guilty by reason of insanity to both charges and, on August 2 and 3 of 1984, was tried by jury. The jury found him guilty as charged on both counts of attempted second degree murder. Subsequently, the defendant was sentenced to fifty years imprisonment, without benefit of parole, probation, or suspension, pursuant to LSA-C.Cr.P. Art. 893.1 and LSA-R.S. 14:95.2, plus two years because the offense was a felony committed with a dangerous weapon. On the other count, the defendant was sentenced to fifteen years without benefit of parole, probation, or suspension, plus an additional two years pursuant to the above mentioned statutes. In all, sixty-nine years were to be served consecutively.

FACTS
The defendant, Frank Curtis Collatt, was employed by Intracoastal City Dry Dock & Shipbuilders from July until December of 1980.[1]
On the afternoon of January 28, 1983, the defendant was extremely upset and disturbed because of a belief that the lives of his family were in jeopardy as a result of his involvement with an alleged Faciane drug operation. A serious confrontation with his father and sister occurred that afternoon, during which he threatened the lives of his family, before handing a pistol to his father and begging his father to take his life. The defendant had been a mental patient since 1970.
Thereafter, the defendant armed himself with two .45 caliber pistols (an automatic and Colt revolver) and a twelve gauge automatic shotgun and drove a family car to the residence of William Faciane. As Faciane was standing under his carport, the defendant, sitting in his vehicle at a distance of approximately forty-five (45) to *180 fifty (50) feet, fired a pistol at the victim. The first two shots missed William Faciane, the third penetrated his chest cavity, causing severe injuries.
Immediately thereafter, the defendant drove to the home of Wayne Touchet. He entered the residence, gun in hand, walked up to his father, pointed the gun into his father's face, and stated that he had just shot one Faciane and was going to get another one.
The defendant then proceeded to the residence of Louis and Annette Faciane, where he attempted to abduct Mr. Faciane at gunpoint.[2] Mr. Faciane was able to elude him. At that time, Mrs. Faciane retreated to the bedroom to call the police, when the defendant fired three (3) more rounds from the .45 automatic through the bedroom window, narrowly missing her.
Approximately two hours later, defendant appeared at the home of Horace Needham, a local minister, and the police were called. As Deputy Thomas Vallot of the Sheriff's Department entered the Needham residence, the defendant was observed crying and distraught. The defendant stated that, "I'm Frank Collatt. I just shot Bill Faciane. Help me, I'm losing my mind." He further informed the deputy that his weapons were located in the automobile. A search of the car led to the discovery of two of the three weapons.[3]
The defendant was then turned over to the City Police and taken into custody, where he refused to answer any questions and demanded the presence of his attorney.
On February 1, 1983, the trial court raised the question of defendant's capacity to proceed, sua sponte, and appointed a Sanity Commission consisting of Dr. Ardley Hebert, M.D. (the coroner) and Thomas Latour, M.D., a psychiatrist, to examine the defendant. The February 4, 1983 report of Dr. Latour indicated that defendant was dangerous to himself and others and recommended involuntary commitment to a mental institution. Despite these findings, Dr. Latour found him capable of standing trial and assisting in his defense at that time.
On April 29, 1983, a hearing was held on the report of the Commission, and the court concluded, based upon the findings of both physicians, that the defendant possessed the requisite mental capacity to proceed. On May 18, 1983, counsel for defendant filed a motion for the appointment of a second Sanity Commission to determine the defendant's mental state at the time of the alleged offenses. The trial court granted the motion on July 23, 1983, and appointed Dr. Latour and Dr. Lou Fink, M.D. The reports filed were inconclusive.
At the hearing on the report of the second Sanity Commission on February 14, 1984, defense counsel moved for a third Commission. The trial judge denied this motion because the defendant was found capable to proceed with his trial based upon Dr. Latour's report of January 18, 1984.[4] Defendant then moved for the appointment of an independent expert.[5] The trial court agreed and suggested that defendant file a written motion requesting the appointment of an independent expert and that he consult the Indigent Defender Board. Defense counsel apparently abandoned this request because he did not pursue it.
*181 On July 31, 1984, the defendant again requested the appointment of an independent expert to examine him in regard to both his capacity to proceed and his mental state at the time of the offenses. The trial court refused, but granted the defendant a three-day continuance to secure any necessary expert assistance (at his own expense).
The trial commenced on August 2, 1984. On the morning of the second day of trial, while in the process of taking a shower, defendant used a double-edged plastic razor to inflict wounds just above his ankles. He was treated and returned to court. Upon his return, defense counsel moved for a continuance, urging that the circumstances rendered the defendant physically and mentally unable to assist in his defense. The trial court appointed Dr. Ardley Hebert and Dr. Thomas Latour to examine the defendant with regard to his present capacity to proceed.
Dr. Latour, in response to questions posed by the trial court, stated that:
"... it would be very, very difficult for him to rationally assist with his defense. [Tr. 324] What I'm saying is his condition right now, I feel is so volitile [sic] that it may fluctuate from minute to minute or hour to hour; and I really have no way of predicting how long he will stay calm, as he is right now. If he would, I would feel he could assist in his defense." [Tr. 326]
The court denied defendant's Motion for Continuance stating that:
"... the Court has observed the defendant and has listened to the testimony, and the expert testimony, and the expert testimony is to the effect that the doctor does not, in fact, know whether or not he can assist in his defense. And from the Court's own observation, even during the argument of this motion, the defendant appears to be assisting in his defense by speaking to his attorney, and has done so since this trial began.
"Those factors, taken together with the other factors brought out by the testimony of the officers, convinced the Court that he does have the mental capacity to proceed, and we will proceed."
The defendant moved for a mistrial at this time on the same grounds. That motion was also denied for the same reasons.
The trial concluded on Friday, August 3, with the finding of guilty as charged by a ten-to-two verdict.

ASSIGNMENT OF ERRORS NOS. 1, 2, & 3
By these assignments, defendant contends that the trial court's refusal to appoint a third Sanity Commission to evaluate his capacity to stand trial was erroneous. Defendant contends that he lacked the legal capacity to proceed with his trial due to his inability to understand the proceedings against him and to assist in his defense, or both.
The burden of proving, by a preponderance of the evidence, that there exists a reasonable ground to doubt his capacity to proceed is on the accused. State v. Wilkerson, 403 So.2d 652 (La.1981); State v. Vincent, 338 So.2d 1376 (La.1976).
A decision to appoint a sanity commission to inquire into the mental condition of the accused is a matter committed to the sound discretion of the trial judge, and absent a clear abuse of that discretion, his findings will not be disturbed. State v. Wilkerson, supra; State v. Nix, 327 So.2d 301 (La.1975), cert. den., 425 U.S. 954, 96 S.Ct. 1732, 48 L.Ed.2d 198 (1976).
In State v. Bennett, 345 So.2d 1129 (La. 1977), the court listed several factors which should be considered, among them:
"... whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction. Facts to consider in determining an accused's ability to assist in his defense include: whether he is able *182 to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial. See, State v. Augustine, supra [252 La. 983, 215 So.2d 634 (1968)]; Robey, Criteria for Competency to Stand Trial: A Checklist for Psychiatrists, 122 Am.J. of Psychiatry, at 616; Note, 6 Loyola Univ.L.J. at 684-85; Note, 4 Columb.Hum.Rights L.Rev. at 245." Id., at 1138.
At the hearing on this matter, defendant argued that the length of time between the prior examinations and the trial date rendered the Commissions' reports obsolete. Defendant failed to introduce evidence of any change in his mental condition from the time of the Sanity Commission's report until the date of the hearing.[6]
A second argument advanced by the defendant was that a Commission member recommended further evaluation and testing. However, that recommendation was made in the context of defendant's capacity at the time the offense was committed not in regard to defendant's capacity to proceed at trial.
None of the evidence adduced at hearing pertained to defendant's present mental state. Apparently, the trial court assumed that the earlier psychiatric evaluations remained valid. Because the defendant failed to produce convincing evidence of any change, the trial court does not appear to have abused its discretion in denying the motion. Therefore, these assignments are without merit.

ASSIGNMENT OF ERROR NO. 4
By this assignment, defendant contends that the trial court erred in denying him the appointment of an independent expert witness to assist the defense in regard to his sanity arguments. However, the record reflects that the trial court was willing to appoint an independent expert, but the defendant failed to follow through on his request.[7]
*183 The record reflects that defense counsel made two requests for the appointment of expert psychiatric assistance to examine defendant's mental state at the time of the commission of the offenses. The first request was made on February 14, 1984, and the second on July 31, 1984. The trial court granted the first request, and the State agreed to pay for it. However, the defendant never followed through in order to procure such assistance. The record reflects that twice the State offered to pay for the cost of such assistance. It appears that the only reason why an independent examination was not made was the defendant's own failure to take the necessary steps.
At the July 31, 1984 hearing, the court asked defense counsel if he had any other motions, to which counsel replied:
"I might say also that we had aI haven't filed it because she hasn't prepared itbut we fully intend to file a motion directlythat in this particular case we had motions for the examination of the defendant, mental examination, as to his present sanity and also his sanity at the time of the commission of the offense...." (Emphasis ours.)
The court refused to appoint an expert at State expense at this time, but did grant a continuance so that the defense could procure independent assistance at its own expense.
Defense counsel, in post-argument brief, at page 2, cites Ake v. Oklahoma, 470 U.S. ___, 105 S.Ct. 1087, 84 L.Ed.2d 53, 105 S.Ct. 1087 (1985), for the proposition that defendant should be granted a new trial because "it is fundamentally unfair to hold an indigent defendant to the burden of proving insanity while at the same time, denying him expert assistance in developing and presenting his defense." However, there is no fundamental unfairness in this case. But for defendant's own neglect, he would have had a court appointed psychiatrist, at State expense, to examine him. He cannot now be heard to complain, after the fact, when he had previous opportunity to be examined and failed to do so.
For all of these reasons, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 5
By this specification of error, the defendant urges that his Motion for Continuance and Mistrial, following his alleged suicide attempt, should have been granted.
The reason advanced by defendant in support of this contention is that the defendant's medical history, which evidenced prior mental illness, coupled with defendant's behavior during trial, should have alerted the trial court to factors which reasonably required "extensive psychiatric evaluation." Defendant cites Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), in support of his contention that the judgment of conviction may not stand since the trial was allowed to proceed without such "indispensible evaluation."
However, the record reflects that the trial court appointed Dr. Latour and Dr. Hebert to examine the defendant (and in fact the defendant was examined) following his alleged suicide attempt, to determine his capacity to proceed. Dr. Latour testified that the defendant had reached a "very labile emotional state" and that he was capable of proceeding, provided he maintained that tranquil state.[8]
Under Louisiana law, the defendant's sanity is presumed. LSA-R.S. 15:432. The defendant has the burden of proving, by a preponderance of the evidence, that as a result of a mental disease or defect he lacks the capacity to understand the proceedings against him or to assist in his own defense. LSA-C.Cr.P. Art. 641; State v. Bennett, supra, at 1132, and cases cited therein. "Moreover, the judge's determination of a defendant's *184 present mental capacity is entitled to great weight and his ruling will be reversed only if it is clearly erroneous." Id.
Furthermore, once a trial has commenced, a continuance shall not be granted. LSA-C.Cr.P. Arts. 708 and 761. The motion for the mistrial was properly denied for reasons previously mentioned, and in addition, LSA-C.Cr.P. Art. 775 provides in part:
"A mistrial may be ordered, and in a jury case the jury dismissed, when:
....
(4) The court finds that the defendant does not have the mental capacity to proceed."
The trial judge stated for the record that his own observations of the defendant during the hearing on this matter convinced him that the defendant was attentive and was in fact assisting in his defense by conversing with his attorney.
"A mistrial is a drastic remedy and, except in instances in which it is mandatory, is only warranted if substantial prejudice results which would deprive the defendant of a fair trial." State v. Tribbet, 415 So.2d 182, 186 (La.1982), and cases cited therein. "The determination of unnecessary prejudice lies within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion." Id.
In light of the facts presented here, there appears to be no abuse of discretion. Therefore, this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 6
This assignment will not be considered since it was not briefed, and it is well settled law that assignments of error which are not briefed are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); State v. Crawford, 441 So.2d 813 (La.App. 3 Cir.1983).

ASSIGNMENT OF ERROR NO. 7
By this assignment, defendant contends that the court erred in denying his Motion for a New Trial since he alleges that he established the insanity defense by a preponderance of the evidence. This argument concerns the sufficiency of the evidence.[9]
A legal presumption exists that the defendant is sane and responsible for his actions. LSA-R.S. 15:432. A defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence. LSA-C. Cr.P. Art. 652. If the facts indicate that because of a mental disease or mental defect the defendant was incapable of distinguishing right from wrong with reference to the conduct in question, the defendant shall not be criminally responsible. LSA-R.S. 14:14; State v. Belgard, 410 So.2d 720 (La.1982).
Appellate review of the sufficiency of the evidence to support a criminal conviction must follow the constitutional standard dictated by Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La. 1984).
"An appellate court reviewing the sufficiency of evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime."
State v. Sutton, 436 So.2d 471, 474 (La. 1983).
After reviewing the record in this matter, we find that there was sufficient evidence for the jury to conclude that the defendant knew right from wrong at the time of the offense. To be more specific concerning the evidence presented to the jury, but without going into extreme detail, we will note the evidence which disproves *185 defendant's contention of legal insanity at the time of the offense.
Dr. Latour, defendant's psychiatrist and a member of a Sanity Commission appointed to examine defendant, testified that some of defendant's actions demonstrated an ability to distinguish right from wrong. According to Dr. Latour, the defendant's remorsefulness and act of disposing of the weapon used in the commission of the offenses showed the presence of mind to know that he had done wrong. Significantly, defendant went to a Pentecostal church after the shootings and then to the home of his minister.
After hearing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found, beyond a reasonable doubt, that defendant had not proved by a preponderance of the evidence that he was insane at the time of the offense. Moore v. Duckworth, 443 U.S. 713, 99 S.Ct. 3088, 61 L.Ed.2d 865 (1979); State v. Noble, 425 So.2d 734 (La. 1983); State v. Claibon, 395 So.2d 770 (La. 1981). Therefore, the trial court did not err, and this assignment lacks merit.

ASSIGNMENT OF ERRORS NOS. 8 and 9
These assignments question the jury instructions given by the trial court. Defendant's failure to raise any contemporaneous objections to the jury instructions precludes consideration of these assignments of error.
LSA-C.Cr.P. Art. 801 requires that an objection be made to the charge before a party can assign as error the failure to give a certain charge.[10] See State v. Jackson, 450 So.2d 621 (La.1984). Accordingly, defendant's failure to object precludes raising these issues on appeal.

ASSIGNMENT OF ERRORS NOS. 10 & 11
By these assignments, defendant contends that the trial court did not individualize the sentence in accordance with C.Cr.P. Art. 894.1, and that the sentence imposed is excessive under Art. 1, § 20 of the Louisiana Constitution of 1974, as interpreted by State v. Sepulvado, 367 So.2d 762 (La. 1979).
C.Cr.P. Art. 894.1 mandates articulation and recordation of the reasons for the imposition of a particular sentence so that the record reflects that the sentence has been particularized for the offender. State v. Guidry, 472 So.2d 349 (La.App. 3 Cir.1985), and cases cited therein.
Although the trial court need not articulate every factor mentioned in the sentencing guidelines which he considered in imposing the sentence, the record must affirmatively show that the trial court did consider the guidelines. State v. Rainwater, 448 So.2d 1387 (La.App. 3 Cir.1984); State v. Straughter, 406 So.2d 221 (La. 1981). In this case, the record reflects that the trial court articulated several factors which he considered in the imposition of defendant's sentence.[11] "The sentencing *186 court's failure to adequately comply with Article 894.1 does not necessitate the invalidation of a sentence or warrant a remand for resentencing if the record clearly illuminates and supports the sentencing choice. State v. Smith, 430 So.2d 31 (La.1983)." State v. Perry, 470 So.2d 426, 428 (La.App. 3 Cir.1985).
The record and the pre-sentence investigation report indicate that the defendant is an extremely dangerous man. He has had a history of mental illness and poses a threat to others and to himself. The record indicates prior delinquency and criminal activity and that the defendant is a substance abuser. Defendant's own psychiatrist recommended involuntary commitment.
Article 1, § 20 of the Louisiana Constitution of 1974 states in pertinent part that: "No law shall subject any person... to cruel, excessive, or unusual punishment...." If the sentence is grossly out of proportion to the severity of the crime or if it is nothing more than the purposeless and needless imposition of pain and suffering, the sentence is excessive. State v. Howard, 414 So.2d 1210 (La.1982); State v. Bonanno, 384 So.2d 355 (La.1980); State v. Goode, 380 So.2d 1361 (La.1980). In order to determine whether or not the penalty is grossly disproportionate to the crime, we must consider the punishment and the crime in light of the harm to society caused by its commission and determine whether the penalty is so disproportionate to the crime as to shock our sense of justice. State v. Beavers, 382 So.2d 943 (La.1980); State v. Bonanno, supra; State v. Smith, 445 So.2d 156 (La.App. 3 Cir.1984); and cases cited therein.
The sentence imposed should not be set aside as excessive absent a manifest abuse of discretion in the imposition of sentences within the statutory limits. State v. Smith, Id. The court, in State v. Sepulvado, supra, stated that a sentence may nevertheless be excessive even though it is within the statutory maximum.
The maximum penalty for attempted second degree murder is 50 years at hard labor. LSA-R.S. 14:27. Because these felony offenses were committed with the use of a firearm, C.Cr.P. Art. 893.1 dictates that the sentence may not be suspended and that the offender shall not be eligible for probation or parole. LSA-R.S. 14:95.2 mandates sentence enhancement.
In this case, the sentences imposed are justified even though the defendant is a first-felony offender. The offenses committed were violent ones. As previously stated, the defendant is an extremely dangerous man. His prior criminal record reflects the fact that he is dangerous to society and to himself. Although defendant may feel that the crimes he has committed are not serious enough to warrant the sentences imposed, we believe that to lessen the sentences would be to deprecate the seriousness of the offenses. Defendant armed himself with a shotgun and two pistols and almost killed one victim as he stood in the driveway of his own home. Defendant shot through a window at the other victim as her body was silhouetted through that window.
After considering all of these circumstances, defendant's sentences are clearly justified. We find that there was no manifest error in the imposition of the sentences. For the above mentioned reasons, the sentences of the trial court are affirmed, and these assignments are without merit.

ASSIGNMENT OF ERROR NO. 12
By his final assignment of error, the defendant contends that the trial court erred in imposing a special condition upon the defendant's sentences.
The portion of the sentences in question here provided that the defendant should "not be assigned to Jackson Barracks in *187 accordance with the provisions of R.S. 15:893.1 ..." LSA-R.S. 15:893.1 provides the Department of Corrections with several categories of persons ineligible for assignment to the Jackson Barracks (or Camp Beauregard).[12] The record reflects that the defendant would fit into several of the categories mentioned in the provision.
The Supreme Court, in State v. Blue, 315 So.2d 281 (La.1975), held that the sentence imposed by the trial court was incorrect insofar as it designated the Louisiana State Penitentiary as the place of commitment instead of the Department of Corrections. However, in this case, the trial judge did no more than indicate that this restriction in LSA-R.S. 15:893.1 was applicable. There appears to be no error in the sentences, and, therefore, this assignment also lacks merit.
Accordingly, defendant's convictions and sentences imposed are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
DOMENGEAUX, J., concurs. As I have stated many times before appellate courts should not review sentences which are within the parameters of the penalty statute, nor review facts under the Jackson rationale.
NOTES
[1] The company is owned by Louis Faciane and operated, in part, by his two sons, William and James. The defendant was terminated on December 19, 1980, by James Faciane.
[2] The chronology of events is not totally clear. At the hearing on the motion for preliminary examination, the order of the shootings had been reversed. The defendant's version also reverses the order of the shootings.
[3] The weapon used by the defendant was never found. According to the pre-sentence report which cites an offense report of the Vermilion Parish Sheriff's Department, the .45 automatic pistol could not be located, but the defendant's coat was found with ammunition (including .45 caliber slugs) at a Pentecostal Church.
[4] Dr. Latour's report stated that the defendant was "able to recall and relate to the facts pertaining to his acts and to the crime," and otherwise able to "assist" in his defense.
[5] Defendant's motion was based upon the recommendation of Dr. Lou Fink that further testing and evaluation of defendant's mental state at the commission of the offenses was necessary.
[6] The Sanity Commission was appointed on July 23, 1983, and the hearing on the Sanity Commission report was held February 14, 1984.
[7] The following conversation took place at the sanity hearing on February 14, 1984:

"THE COURT: You're entitled to have an independent examination if you wish. He can be examined by an independent physician, but he has been already examined by the Sanity Commission.
MR. DEBLANC: All right. Well, then, we move to have this, an independent examination, and since he's an indigent, I think he's entitled to have this.
THE COURT: Well, that would be up to the Indigent Defender Board.
MR. DEBLANC: Well, he's already on it.
MR. WOODRUFF: Insofar asthey are entitled to have whatever kind of examinations or tests they need to be made independently, but that is not a matter for motion before the Court. And insofar as my personal experience has been, they are entitled to funding for those expenses from the Criminal Court Fund. If application will be made for payment for those things, I'm sure the Criminal Court FundI'll certainly approve it.
THE COURT: Okay. Well, you can file the proper motion, but at this time I'm going to deny this motion because it goes further than that. If you want an independent examination, I'll ask that you file another motion asking for an independent examination under (Interrupted).
MR. DEBLANC: Under that Article. Under 650?
THE COURT: Under Article 646. `The Court order for a mental examination shall not deprive the defendant or the District Attorney of the right to an independent mental examination by a physician of his choice and such physician shall be permitted to have reasonable access to the defendant for the purpose of the examination.'
So under Article 646, you can file a motion (Interrupted.)
MR. DEBLANC: I'd rather have the State pay for it, though.
MR. WOODRUFF: As I just told you, Mr. DeBlanc, I don't think that will be any problem.
MR. DEBLANC: All right."
[8] Dr. Latour's expert testimony indicated the possibility that defendant's mental condition might fluctuate. The record reflects that Dr. Latour was not certain of whether the defendant would be composed enough throughout the trial to assist in his own defense.
[9] The defendant is apparently arguing that no rational trier of fact could have found him sane at the time of the offenses.
[10] LSA-C.Cr.P. Art. 801 provides, in part:

"... A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury."
[11] "THE COURT: Okay, the Court has carefully studied the presentence report, and after considering all of the matters contained in the report, as well as the evidence brought out at the trial, the Court will make these findings regarding the sentence:

"Those are, first, that you did shoot and almost kill William Faciane, and that you did shoot at Mrs. Annette Faciane, all with a firearm, although no bullet did strike Mrs. Faciane;
"That the report reflects that you did have some involvement with drugs, and I find that your conduct did cause serious harm to Mr. Faciane and did threaten to cause the same serious harm to Mrs. Faciane when you fired into the home that she was in at the time.
"The Court finds that you did contemplate that your conduct would cause and/or threaten serious harm, and that you did not act under strong provocation at the time you did these things. There are, in the court's opinion, no substantial grounds to excuse or justify your conduct. You simply, in the court's opinion, took the law into your own hands.
"The Court therefore finds that you are in need of correctional treatment, and such treatment can be most effectively provided by commitment to an institution, and that a lesser sentence would deprecate the seriousness of the crimes which you did commit in this case." (Emphasis ours.)
[12] LSA-R.S. 15:893.1 provides, in pertinent part:

"A. The Department of Corrections shall not assign any inmate included in the categories listed below to serve any portion of his term at the correctional institution at Jackson Barracks or Camp Beauregard:
(1) Inmates who have been convicted of murder, aggravated rape, aggravated kidnapping, armed robbery, sale of a controlled dangerous substance, other than marijuana, aggravated arson, or any sex related offense;
(2) Inmates who have a balance of time extending beyond five years to the earliest release date.
(3) Inmates sentenced pursuant to R.S. 15:529.1 et seq.
(4) Inmates who do not qualify for minimum custody status (trustee).
(5) Inmates with records, either arrest or institutional records, which reveal compulsive or habitual use of violence against the person.
(6) Any inmate whose presence in the community is likely to evoke adverse public reaction.
(7) Persons who are currently under and/or who have demonstrated a need for extensive and/or intensive medical treatment. At the time treatment has been completed and such termination of services has been documented by competent medical staff, persons may be considered as eligible for transfer.
(8) Persons who have escaped and/or who have abetted an escape and/or have attempted to escape within a period of the last seven years.
(9) Persons who have demonstrated an overt-aggressive pattern of homosexual behavior to the extent that it would disrupt the smooth daily operation of the institution.
(10) Inmates whose institutional records reflect habitual and compulsive violent behavior, consistent signs of bad work habits, lack of cooperation or good faith, or other undesirable behavior."