**Jimmy L. GLASS, Petitioner-Appellant,**

**v.**

**Frank BLACKBURN, Warden, Louisiana State Penitentiary at Angola, Louisiana, Respondent-Appellee.**

No. 85–4499.

United States Court of Appeals, Fifth Circuit.

June 12, 1986.

Before POLITZ, GARWOOD, and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

Sentenced to death by a jury for the murders of Newton and Earline Brown on Christmas Day, 1982, Jimmy L. Glass petitions for a writ of habeas corpus, 28 U.S.C. § 2254. The district court denied the petition and refused to issue a certificate of probable cause, which Glass now seeks from this court, 28 U.S.C. § 2253. We deny the requested certificate of probable cause, dismiss the appeal, and vacate the stay of execution heretofore entered.

*Background*

At approximately 8:00 p.m. on December 24, 1982, Glass and Jimmy Wingo escaped from the Webster Parish jail in Minden, Louisiana. The two later broke into the Browns' residence in the nearby town of Dixie Inn, robbed the Browns, ransacked their home, and before making their getaway in the Browns' automobile, shot and killed the two helpless victims. The next day, one of the Browns' children found his dead parents, bound and gagged in their bed and shot through the head.[1] Wingo was flushed out of the woods in Texas and arrested on January 5, 1983.[2] Glass fled to San Diego, California, where he was arrested on January 6, 1983.

On January 8, 1983, after receiving the requisite *Miranda*[3] warnings and signing a waiver, Glass was questioned in San Diego by two Louisiana police officers dispatched to escort him back to Louisiana. Glass told the officers that he shot the Browns but that he did so because Wingo had forced him to.

M. Michele Fournet, Baton Rouge, La., for petitioner-appellant.

Henry N. Brown, Jr., Dist. Atty., 26th Judicial Dist., Benton, La., William J. Guste, Atty. Gen., State of La., Baton Rouge, La., for respondent-appellee.

---

**1.** A more complete summary of the evidence may be found in the opinion of the Louisiana Supreme Court upholding Glass's death sentence. *State v. Glass,* 455 So.2d 659 (La.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2159, 85 L.Ed.2d 514, *reh'g denied,* —— U.S. ——, 105 S.Ct. 3516, 87 L.Ed.2d 645 (1985).

**2.** Wingo's conviction and death sentence have been upheld, *State v. Wingo,* 457 So.2d 1159 (La.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2049, 85 L.Ed.2d 322, *reh'g denied,* —— U.S. ——, 105 S.Ct. 2691, 86 L.Ed.2d 708 (1985), and his petition for habeas corpus denied, *Wingo v. Blackburn,* 783 F.2d 1046 (5th Cir.), *reh'g en banc denied,* 786 F.2d 654 (5th Cir.1986).

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Glass waived extradition and was voluntarily returned to Louisiana on January 9, 1983. On the following day, without any questioning or prompting from the officers, Glass expanded his account by telling the officers that he had shot the Browns only after Wingo had pointed a shotgun at him, threatened to kill him, and told him that because he (Glass) had mentioned Wingo's name in earshot of the Browns as they ransacked the home that he (Glass) would have to kill them. Glass never sought suppression of his inculpatory statements but, rather, used them in support of his defense based on duress. He consistently asserted that Wingo had forced him to kill the Browns. He so testified at trial.

Indicted for murder, Glass pleaded not guilty and not guilty by reason of insanity. Because of extensive local publicity, the trial was moved 200 miles south to Lafayette, Louisiana. During pretrial proceedings, pursuant to La.C.Cr.P. arts. 644 and 650, the presiding judge appointed a two-doctor sanity commission. One psychiatrist specifically testified that Glass was legally sane both at the time of the interview and at the time of the offense. The second psychiatrist specifically addressed Glass's sanity at the time of the interview and concluded that he was competent to stand trial and assist in his defense. This doctor, in the judgment of the Supreme Court of Louisiana, implicitly attested to Glass's mental state at the time of the murders.[4]

Glass and Wingo were separately tried. Glass's defense was lack of willfulness because of Wingo's coercion. After a five-day trial on the guilt phase, the jury convicted Glass of capital murder. The penalty phase of the trial continued the next day.

At the penalty phase, the state relied on the evidence previously adduced and the written reports of the members of the sanity commission. La.C.Cr.P. art. 645. Glass testified and also offered the testimony of: (1) a criminal justice expert concerning the adaptability of 20-year-old men to life sentences;[5] (2) an Episcopalian minister as an expert on Christian ethics and morals on the subject of murder and the taking of human life and, on the basis of two interviews, on Glass's remorsefulness; and (3) Glass's mother. After deliberating for several hours, the jury returned sentences of death for both murders. The Louisiana Supreme Court affirmed. *State v. Glass*, 455 So.2d 659 (La.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2159, 85 L.Ed.2d 514, *reh'g denied*, —— U.S. ——, 105 S.Ct. 3516, 87 L.Ed.2d 645 (1985). State post-conviction relief was denied, leading to the instant federal habeas petition.

*Analysis*

Petitioner's very able counsel present twelve issues in their effort to secure a certificate of probable cause and, ultimately, a writ of habeas corpus. After a studied examination of each, we find none meritorious.

1. *Psychiatric examination*

■ Citing *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), Glass maintains that he was deprived of his constitutional right to an independent psychiatric examination because the examination and report of only one of the two members of the sanity commission specifically considered his legal sanity at the time

---

**4.** The Louisiana Supreme Court stated:

A fair reading of the testimony of Dr. Turner, coupled with his brief report, including its reference to defendant's knowing the difference between right and wrong, the appropriate test for time of offense insanity under La.R.S. 14:14, leads us to conclude that the doctor did examine for and testify to defendant's sanity at the time of the offense. Under these circumstances, it was not error for the

trial judge to refuse to appoint another doctor.

Having determined that the sanity commission appointed by the trial court fulfilled its duties, we find that this assignment of error is" without merit.

455 So.2d at 662 (footnote omitted).

**5.** This witness's testimony was excluded in the companion case, *State v. Wingo*, 457 So.2d at 1165.

of the murders. Even were we to assume that the Supreme Court of Louisiana erred, and that the second doctor did not testify to sanity at the time of the offense, *Ake* would give Glass little succor.

In *Ake* the defendant had pleaded not guilty by reason of insanity and, because he was unable to afford a psychiatric examination, had requested that the state provide one. The State of Oklahoma refused Ake's request. Ake was convicted and sentenced to death. The Supreme Court reversed, holding that

> when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist ..., [and] we leave to the States the decision on how to implement this right.

470 U.S. at ——, 105 S.Ct. at 1097, 84 L.Ed.2d at 66.

Glass sought and secured the appointment of a sanity commission. He was examined and both doctors reported on his then-current mental capacity; one expressly and one implicitly concluded that he was also sane at the time of the murders. The rule of *Ake* requires that Louisiana assure Glass "access to a competent psychiatrist" 470 U.S. at ——, 105 S.Ct. at 1097, 84 L.Ed.2d at 66.

In addition to the sanity commission, Glass had available upon request the services of an independent psychiatrist who would have been paid with public funds available to the Indigent Defender Board to assist indigent defendants. We were informed at oral argument that this had been done for Jimmy Wingo and could have been done for Glass. Glass also could have re-

quested a second sanity commission. *See* *State v. Collatt,* 477 So.2d 177 (La.App. 1985).

The psychiatric evaluation actually provided Glass satisfied *Ake.* That which was available exceeded the requirements. No more was constitutionally required.

2. *Suppression of statements*

■ Glass contends that his trial was tainted by the admission into evidence of the inculpatory statements made to the officers in San Diego on January 8, 1983 and in Minden on January 10, 1983. This claim, first raised in the state collateral attack, was rejected by the court without comment. Glass claims that his confessions were inadmissible because they were given without a knowing and inteligent waiver of his right to counsel. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The district court held that Glass's waiver of counsel was knowing and intelligent. Alternatively, the district court held that Glass had waived the issue by failing to seek suppression of the statements at trial.

Agreeing with the court *a quo* that Glass has waived this issue, we do not reach its merits. Under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), a federal court may not consider a habeas claim challenging a state conviction when that claim is barred under state law because of the petitioner's failure to comply with state procedural rules, unless the petitioner shows adequate cause for the timely failure to object and actual prejudice. *See also Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Preston v. Maggio,* 705 F.2d 113 (5th Cir. 1983).

Our analysis begins with an inquiry whether the *Edwards* claim is barred on procedural grounds. We answer this query by reference to the rules designed to fathom whether a state court rejection of a claim without comment was on the merits or because of a procedural bar. We recently surveyed and summarized these rules in *Webb v. Blackburn,* 773 F.2d 646 (5th Cir.

1985). Initially, we must "determine how the [Louisiana] courts apply their various procedural default rules to particular cases." *Id.* at 650. Louisiana courts require strict adherence to the contemporaneous objection rule to the content of a witness's testimony and to the admission of evidence of a confession. La.C.Cr.P. art. 841; *State v. McCloud,* 357 So.2d 1132 (La.1978); *State v. Hebert,* 443 So.2d 613 (La.App.1983), *writ denied,* 444 So.2d 1215 (La.1984). It appears certain that the claim was rejected by the Louisiana courts for procedural default.

■ Since we conclude that the claim was not rejected on the merits by the Louisiana courts, we must view the *Edwards* claim under the dual prongs of adequate cause and actual prejudice. We conclude that Glass has not shown, because he cannot show, that his trial counsel acted without appropriate reason for not seeking the suppression of his statements. The decision was a strategic one made by very experienced and very competent counsel.[6] In his pretrial statements and trial testimony, Glass asserted that Wingo threatened his life and held a cocked shotgun to his head to force him to kill the Browns. The reason for the lack of objection is obvious —Glass's counsel wanted this evidence to buttress the defense of duress. Counsel had a good reason for not objecting. The initial prong of *Sykes* is not satisfied; we consider the *Edwards* claim no further.

### 3. *Ineffective assistance of counsel*

■ Glass next contends that his trial counsel were ineffective during the penalty phase of the proceedings. The ineffectiveness claim is focused on counsel's failure to call friends and relatives as mitigating witnesses. In affidavits attached to Glass's state petition for post-conviction relief, these witnesses averred that they would have pleaded for Glass's life and would have testified about Glass's difficult home life as a youth, his father's alcoholism, and his sensitive and decent nature. Glass's trial counsel submitted affidavits candidly stating that their failure to call these potential witnesses was not the result of a strategic choice but was, rather, the result of mental and physical fatigue at the conclusion of the guilt phase.

To succeed on this claim, Glass must satisfy the stringent test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and establish that his trial counsel's performance was deficient and that he was prejudiced as a consequence. 466 U.S. at 687, 104 S.Ct. at 2064. Because we find that Glass suffered no prejudice from his attorneys' alleged failings, we need not decide whether their performance was deficient. 466 U.S. at 697, 104 S.Ct. 2069.

"When a defendant challenges a death sentence . . . , the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." 466 U.S. at 695, 104 S.Ct. 2068.

Giving the proposed evidence its most positive gloss, we are not persuaded of the likelihood that the jury would have rendered a different verdict had it been presented. The murders were calculated and cold-blooded. The coroner-pathologist testified that, considering the point and angle of entry of the bullets, in order to shoot the victims Glass had to kneel on the bed between and immediately over them. He first shot the trussed and gagged Newton Brown who was face-down on the bed. Mrs. Brown raised up in terror to scream. He shot her. The mental anguish endured by the victims, leading up to and during

6. Glenn Armstrong was appointed to represent Glass at trial. Armstrong is an experienced, highly-regarded criminal defense attorney in north Louisiana. He has practiced law for 20 years, and for several years was an assistant district attorney prosecuting a wide variety of crimes, including murder. Since leaving the district attorney's office he has developed an extensive criminal practice. He secured the assistance of a second attorney, Maurice Loridans, to represent Glass at trial.

their senseless murders, even as portrayed by Glass, was exquisite. Considering the circumstances surrounding the murders, we are convinced that the failure to offer the proposed mitigating evidence did not materially affect the imposition of the death sentence by the jury. *See Mattheson v. King*, 751 F.2d 1432 (5th Cir.1985), *cert. denied as moot*, — U.S. —, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986); *Celestine v. Blackburn*, 750 F.2d 353 (5th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 3490, 87 L.Ed.2d 624, *reh'g denied*, — U.S. —, 106 S.Ct. 16, 87 L.Ed.2d 695 (1985); *Willie v. Maggio*, 737 F.2d 1372 (5th Cir.1984).

4. Grigsby (McCree) *claim*

■ Glass next contends that he was denied due process at the guilt phase of his trial because he was convicted by a death-qualified jury from which *Witherspoon*-excludables [7] were excused. We have consistently rejected this contention and the issue is now foreclosed by the Supreme Court's recent decision in *Lockhart v. McCree*, 476 U.S. —, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), *rev'g Grigsby v. Mabry*, 758 F.2d 226 (8th Cir.1985) (*en banc*). This challenge no longer has any vitality.

5. *Prosecutorial misconduct*

■ Glass raises a panoply of complaints against the questions and argument of the prosecutor. Only one of his complaints merits discussion.

During the penalty phase, in cross-examining the defendant's expert on criminal justice, the prosecutor asked:

Q [Y]ou stated to [defense counsel] that you probably knew all the people at one time on death row [in Louisiana] . . .

A At one time; yes.

Q . . . [H]as any one of them been executed?

None had been. During his rebuttal argument at the penalty phase, the prosecutor stated:

The law in Louisiana is that we do have the death penalty. Whether anybody is executed or not don't matter, but we do have it.

Glass argues that the questions and comment improperly suggested to the jury that the imposition of the death sentence would not be their responsibility but would ultimately fall on the shoulders of appellate courts or state officials with pardon authority, in violation of *Caldwell v. Mississippi*, — U.S. —, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). These oblique references by the prosecutor do not bring the remarks within the *Caldwell* parameters. It cannot be said that this jury was told that it was not the essential decision-maker on the question of punishment. *See id.*, — U.S. at —, 105 S.Ct. at 2645, 86 L.Ed. at 246 (*distinguishing Donnelly v. DeChristophoro*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). The court instructed the jury twice that the choice of a death sentence or a life sentence was their responsibility. And in closing argument, the prosecutor underscored their responsibility: "It is the job of the jury now to determine what would be the appropriate punishment in the case." We perceive no constitutional taint.

6. *Compulsion defense*

■ Citing *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), Glass argues that he was denied due process because Louisiana does not recognize compulsion as a defense to murder. La.R.S. 14:18(6). The state legislatures have vast powers to establish the elements of crimes, subject to the substantive provisions of the Constitution. *See, e.g., Chicago, B. & Q. Ry. v. United States*, 220 U.S. 559, 31 S.Ct. 612, 55 L.Ed. 582 (1911); *Stepniewski v. Gagnon*, 732 F.2d 567 (7th Cir. 1984). Where a fundamental right is involved, the state's legislative authority must yield. *See, e.g., Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Obviously, there is no fundamental right to commit murder, even under duress. Substantive due process is not implicated. *See also Baldwin v. Blackburn*, 653 F.2d 942 (5th Cir.1981), *cert. denied*, 456 U.S.

---

7. *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct.

1770, 20 L.Ed.2d 776 (1968).

950, 102 S.Ct. 2021, 72 L.Ed.2d 475 (1982); *Hallowell v. Keve,* 555 F.2d 103 (3d Cir.1977).

We would note that the Louisiana Legislature has not ignored the practical relevance of duress. Under La.C.Cr.P. art. 905.5(c), at the penalty phase one of the mitigating factors which may be considered is that "[t]he offense was committed while the offender was under the influence or under the domination of another person." The trial judge so charged the jury which, in sentencing Glass to death, obviously considered his duress defense as inadequate mitigation for the murders.

### 7. *Double-counting of aggravating factors*

Glass argues that two of the four aggravating factors found by the jury are constitutionally impermissible because they are the product of "double-counting," *i.e.,* they are both elements of the offense of capital murder and aggravating factors. The jury found four statutory aggravating factors: (1) the offender was engaged in the perpetration of an aggravated burglary; (2) the offender knowingly created risk of death to more than one person; (3) the offense was committed in an especially heinous, atrocious, and cruel manner; and (4) the offender at the time of the offense was imprisoned after sentence for commission of an unrelated forcible felony. The Louisiana Supreme Court upheld the first two factors and pretermitted evaluation of the latter two. 455 So.2d at 669–70.

Glass maintains that the latter two factors are not supported by the evidence and that his death sentence must therefore be set aside unless we uphold the two aggravating factors relied on by the Louisiana Supreme Court. Citing *Collins v. Lockhart,* 754 F.2d 258 (8th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985), Glass maintains that the first two factors fail constitutional muster.

In *Collins,* the defendant was convicted of murder during the commission of a crime for pecuniary gain, a capital offense in Arkansas. Commission of a murder in the course of an offense for pecuniary gain is also a statutory aggravating factor in Arkansas. The Eighth Circuit concluded that use of the crime-for-pecuniary-gain factor as both an element of the offense of capital murder and an aggravating factor justifying the death penalty allowed the jury to impose the death penalty "on a robber-murderer without having made a finding that narrows the class of those who have committed this death-eligible crime." 754 F.2d at 264. In finding this double-counting to be impermissible, the Eighth Circuit distinguished our decision in *Gray v. Lucas,* 677 F.2d 1086 (5th Cir.1982), *cert. denied,* 461 U.S. 910, 103 S.Ct. 3099, 76 L.Ed.2d 1357, *reh'g denied,* 462 U.S. 1124, 103 S.Ct. 3099, 77 L.Ed.2d 1357 (1983), as not having "explicitly address[ed] the argument that double counting allows for arbitrary imposition of the death sentence, but rather [as having] focus[ed] on the argument that double counting imposes a disproportionate punishment on a specific group of death-eligible criminals." 754 F.2d at 264 n. 3.

Even were we to follow the *Collins* rationale, it would avail Glass naught.[8]

■■■■ Glass was convicted of first degree murder under La.R.S. 14:30.[9] The

---

**8.** This precise argument has been rejected by the Louisiana Supreme Court, *State v. Knighton,* 436 So.2d 1141 (La.1983), *cert. denied,* 465 U.S. 1051 (1984); *State v. Clark,* 387 So.2d 1124 (La.1980), *cert. denied,* 449 U.S. 1103, 101 S.Ct. 900, 66 L.Ed.2d 830, *reh'g denied,* 450 U.S. 989, 101 S.Ct. 1530, 67 L.Ed.2d 825 (1981), on the ground that conviction only requires the existence of the elements of the crime whereas sentence of death requires, in addition, rejection of mitigating circumstances. *See also Evans v. Thigpen,* 631 F.Supp. 274 (S.D.Miss.1986).

**9.** La.R.S. § 14:30(A) provides:

First degree murder is the killing of a human being:

(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery;

(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a

jury was not obliged to specify the numbered paragraph upon which it based its verdict. In sentencing Glass to death, however, the jury was required to find and specify the aggravating circumstance(s) upon which it based the sentence of death. The jury found four of the aggravating factors set forth in La.C.Cr.P. art. 905.4: (1) the offender was engaged in the perpetration of aggravated burglary (905.4(a)); (2) the offender knowingly created risk of death to more than one person (905.4(d)); (3) the offense was committed in an especially heinous, atrocious and cruel manner (905.4(g)); and (4) the offender at the time of the offense was imprisoned after sentence for commission of an unrelated forcible felony (905.4(f)). As noted, the Supreme Court of Louisiana found sufficient evidence to support the first two factors and found it unnecessary to reach the latter two. 455 So.2d at 669–70.

The rationale of *Collins* is inapposite. The case before us presents two discrete aggravating factors. If either were found invalid, the other would remain and, under Louisiana law, would suffice to support the jury's imposition of the death penalty. *See, e.g., State v. Ward,* 483 So.2d 578 (La.1986); *State v. Wilson,* 467 So.2d 503 (La.), *cert. denied,* —— U.S. ——, 106 S.Ct. 281, 88 L.Ed.2d 246, *reh'g denied,* —— U.S. ——, 106 S.Ct. 585, 88 L.Ed.2d 567 (1985).

We note our substantial reservation to applying the rationale of *Collins* to the Louisiana capital murder format in any instance. But we would not apply the *Collins* rubric to situations in which the jury finds more than one aggravating factor. Bizarre results might ensue. One could envision a situation where a person was proven guilty of killing: (1) a peace officer who was engaged in the performance of his duties, (2) for money, (3) while the offender was committing an armed robbery, and (4)

> fireman or peace officer engaged in the performance of his lawful duties;
> (3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person; or
> (4) When the offender has specific intent to kill or inflict great bodily harm and has of-

killing a child under 12 years of age, all in such a manner that he (5) demonstrated specific intent to kill more than one person and to put others at risk of death. We find in this gruesome scenario killings which fit each of the five first degree murder subparagraphs of La.R.S. 14:30(A). Each also contains an aggravating factor as enumerated in La.C.Cr.P. art. 905.4. Is it conceivable that the two murders in the hypothet would not be subject to the death penalty established by the legislature because of a concern for real or imagined double-counting? We do not think so. Were *Collins* to require such, we would reject it.

8. *Admission of letter*

■ Glass objects to the use by the prosecution of a letter he wrote to his mother during the flight from San Diego, arguing that its seizure violated the fourth amendment. This claim was fairly presented to the state courts. It was rejected by the Louisiana Supreme Court in the unpublished portion of its opinion. That finding precludes our review of this claim. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

9–12. *Remaining claims*

We have reviewed the remaining claims: an alleged improper *Witherspoon* excusal; an alleged disproportionate penalty under *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); an alleged error in the specific intent charge; and the alleged insufficiency of the evidence of guilt, *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and find them entirely without merit.

*Conclusion*

Glass has failed "to make [the] 'substantial showing of the denial of [a] federal

> fered, has been offered, has given, or has received anything of value for the killing [; or]
> (5) When the offender has the specific intent to kill or to inflict great bodily harm upon a victim under the age of twelve years.

right'" necessary for issuance of a certificate of probable cause. *Barefoot v. Estelle,* 463 U.S. 880, 893, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983) (*quoting Stewart v. Beto,* 454 F.2d 268, 270 n. 2 (5th Cir.1971), *cert. denied,* 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed.2d 126 (1972)).

Accordingly, the application for a certificate of probable cause is DENIED, the appeal is DISMISSED, and the stay of execution heretofore entered is VACATED.