Jimmy L. GLASS, Petitioner-Appellant,

v.

Hilton BUTLER, Warden, Louisiana
State Penitentiary at Angola,
Louisiana, Respondent-Appellee.

No. 87–4433.

United States Court of Appeals,
Fifth Circuit.

June 10, 1987.

M. Michele Fournet, Baton Rouge, La.,
for petitioner-appellant.

Henry N. Brown, Jr., Dist. Atty., Benton,
La., for respondent-appellee.

Before POLITZ, GARWOOD and
HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

The district court having dismissed his
application for a writ of habeas corpus, and
having denied his requests for a stay of
execution and for a certificate of probable
cause for appeal, Jimmy L. Glass seeks
from this court *in forma pauperis* status,
the grant of a certificate of probable cause,
and a stay of execution. We grant IFP.
Bearing in mind the deference due the dis-
trict court's denial of a certificate of proba-
ble cause, we have independently examined
the entire record in this cause, including

the reading, by a member of this panel, of the entire transcript of the penalty phase of Glass's trial. We conclude that Glass has not made the substantial showing of the denial of a federal right required for the issuance of a certificate of probable cause. *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). Accordingly, the application for a certificate of probable cause is denied, the stay of execution is denied, and the appeal is dismissed.

## Background

Glass was convicted of first degree murder and sentenced to death. The full details surrounding his crime and conviction are set forth in the affirmance on direct appeal by the Supreme Court of Louisiana, *State v. Glass,* 455 So.2d 659 (La.1984), *cert. denied,* 471 U.S. 1080, 105 S.Ct. 2159, 85 L.Ed.2d 514, *reh'g denied,* 472 U.S. 1033, 105 S.Ct. 3516, 87 L.Ed.2d 645 (1985), and in the opinion by this court affirming the denial of federal habeas relief, *Glass v. Blackburn,* 791 F.2d 1165 (5th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1985, 95 L.Ed.2d 824 (1987). We perceive no necessity to repeat those background facts here. ·

This is Glass's second application for a writ of habeas corpus under 28 U.S.C. § 2254. The first application, filed by the same counsel representing Glass herein, presented numerous claims which we melded into twelve. Each of those issues was examined and found to be without merit. 791 F.2d at 1168–73. The present application presents five claims for relief:

1) The eighth and fourteenth amendments prohibit imposition of the death penalty on one coerced to commit murder.

2) The trial court erred in its instructions about coercion at the penalty phase.

3) The trial court erred in its instructions about mitigating circumstances.

4) Glass received ineffective assistance of counsel at the sentencing phase.

5) The court refused to allow the jury to hear mitigating evidence.

## Analysis

The district court concluded that the present application constituted an abuse of the writ, Rule 9(b), 28 U.S.C. foll. § 2254, but alternatively considered and rejected each claim on the merits. We agree with the district court, assigning an additional reason for rejecting claim number four.

### 1. *Effect of coercion on death sentence*

Glass maintains that the eighth and fourteenth amendments are violated when a person is sentenced to death for a coerced killing. Glass cites in support of this proposition *Tison v. Arizona,* — U.S. —, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), and a handbook on criminal law. The contention founders both factually and legally.

Factually, the evidence of coercion was fully developed and presented to the jury. Legally, Glass cites no authority for the proposition that coercion or duress, causing or contributing to a murder, is or can be a *per se* bar to imposition of the death penalty. *Tison* does not support that proposition, as it refines the rule of *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), to provide that the eighth amendment does not prohibit the imposition of the death penalty on one who does the killing, intends the killing, participates in the killing, or demonstrates a reckless indifference to the welfare of the victims. The facts of *Tison* are similar to those at bar; both cases involve escapees who commit multiple murders. Tison did not do the actual killing, claiming an unawareness of that tragedy which occurred when he was away getting water for the victims, whom he understood would be left in the desert. On close study it is apparent that *Tison* is contrary to Glass's position. The *Tison* rationale would permit the imposition of the death penalty on Glass, in the case now before us, if Wingo had fired the murder weapon. In such an instance, it would have been necessary to show only that Glass intended or participated in the killing, or participated in the offense with a reckless indifference to the plight of the Brown's, to be subject to the

death penalty. We find this claim by Glass without merit.

### 2. *Error in jury instructions on coercion*

At the conclusion of the guilt phase, the very able trial judge correctly instructed the jury that under Louisiana law coercion was not a defense to murder. We rejected a constitutional attack on that provision of Louisiana law in our earlier opinion, 791 F.2d at 1171–72. Glass now argues that because of this correct instruction at the guilt phase, the trial judge had an obligation to give very express instructions at the penalty phase, highlighting and underscoring that coercion was to be considered as a mitigating factor.

■ We agree that a proper penalty phase charge had to include the instruction that coercion could be a mitigating factor. We do not agree that such an instruction was entitled to greater prominence than any other, provided the charge as given was correct and adequate. As we noted in our prior opinion, 791 F.2d at 1172, the jury was charged that it could consider as a mitigating factor, evidence that "the offense was committed while the offender was under the influence or under the domination of another person." This claim of error is without merit.

### 3. *Error in charge about mitigation*

Glass next contends the trial judge erred in the charge about mitigation, suggesting that the judge did not inform the jury that even though it found one or more aggravating factors, it still could consider mitigating factors and return a verdict of life imprisonment. This contention misperceives the penalty-phase methodology and ignores the comprehensive charge given by the court. It further fails to recognize that the identical charge was found adequate by this court in denying habeas in the companion case, *Wingo v. Blackburn*, 783 F.2d 1046 (5th Cir.), *reh'g en banc denied*, 786 F.2d 654 (5th Cir.1986).

■ During the penalty phase the jury, having found Glass guilty of first-degree murder, had to determine whether the punishment was to be death or life imprisonment. Before it could impose the death penalty, the jury was told that it had to find one or more of the statutorily designated aggravating factors. Having done that, the jury was told that it then had to determine unanimously whether the aggravating factor or factors found, in light of any evidence of mitigation offered, warranted imposition of the death penalty. Consideration of mitigating factors necessarily followed after a determination that one or more aggravating factors justified imposition of the ultimate punishment. Glass correctly insists that the jury may consider mitigation and return a verdict of life imprisonment even though an aggravating factor has been found. That is the necessary sequence of determinations, and that is the sequence followed in this case.

■ The charge as given fully explicated the Louisiana law on aggravation and mitigation, in a manner totally consistent with Louisiana law and controlling federal precedents. *See Hitchcock v. Dugger*, —— U.S. ——, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion). The judge informed the jury:

Ladies and Gentlemen, you now must determine whether the defendant should be sentenced to death or to life imprisonment without the benefit of probation, parole or suspension of sentence. You must consider the circumstances of the offense and the character and propensity of the defendant in determining the sentence to be imposed.

\* \* \* \* \* \*

You are required to consider the existence of aggravating and mitigating circumstances in deciding which sentence should be imposed.

\* \* \* \* \* \*

Before you decide that a sentence of death should be imposed, you must unanimously find beyond a reasonable doubt

that at least one statutory aggravating circumstance exists. If you find beyond a reasonable doubt that any of the statutory aggravating circumstances existed you may consider imposing the sentence of death.

\* \* \* \* \* \*

Even if you find the existence of an alleged aggravating circumstance, you must also consider any mitigating circumstances before you decide that a sentence of death should be imposed. The law specifically provides certain mitigating circumstances, and they are: ... the offense was committed while the offender was under the influence or under the domination of another person.

\* \* \* \* \* .\*

However, in addition to those specifically provided mitigating circumstances, you may also consider any other relevant mitigating circumstances. You are not limited only to those mitigating circumstances which are defined. You may consider any other relevant circumstances which you feel should mitigate the severity of the penalty to be imposed.

\* \* \* \* \* \*

Whether an aggravating or mitigating circumstance exists is a fact for you to determine based upon the evidence presented.

\* \* \* \* \* \*

In addition to the evidence presented at this sentencing hearing in deciding the sentence to be imposed, you may consider evidence presented during the guilt determination trial.

### 4. *Ineffective assistance of counsel*

In his prior petition Glass claimed ineffective assistance of counsel during the penalty phase, primarily faulting trial counsel for failing to call various witnesses to testify about his personal background, nature, and family circumstances. We rejected that claim, 791 F.2d 1170–71. Glass now repeats those allegations in part; the affidavit of trial counsel, dated July 12, 1985, attached to the first application is attached to the present application. The present application also relies on an affidavit of a psychologist which was procured prior to the filing of the first federal habeas application. Further, Glass seeks to revive the ineffectiveness charge by adding new specifics about the failure of counsel to offer evidence at the penalty phase. This he may not do. As we reminded in *Johnson v. McCotter*, 803 F.2d 830, 833 (5th Cir.1986): "A claim of ineffective assistance of counsel, once raised, litigated and rejected at an earlier habeas proceeding cannot be raised in a later proceeding merely by varying the factors allegedly demonstrating incompetency." (*Quoting McDonald v. Estelle*, 590 F.2d 153, 155 (5th Cir.1979)).

### 5. *Refusal to allow mitigating evidence*

■ Finally, Glass contends that the trial court erred by refusing to allow introduction of mitigating evidence. Had this occurred, Glass would have stated a claim warranting issuance of the Great Writ, commanding that another sentencing trial be held. The record of the trial, however, does not bear out his contention. At the penalty phase the state offered the evidence adduced at the guilt phase, added two medical reports, evidence of a prior offense, and rested. The defense tendered four witnesses: Glass, his mother, an expert on criminal justice with broad experience with Louisiana prisoners both on death row and sentenced to life, and an Episcopal priest. Persistent objections by the prosecutor, if sustained, would have prevented the introduction of arguably relevant mitigating evidence, but the trial court maintained the balance. As a result of the trial court rulings and the tenacity of defense counsel, the essence of the challenged evidence was adduced. The expert spoke about contributions by "lifers," both within and outside of prison, and the fact that no prisoner sentenced to life had been released from any Louisiana prison since 1978, including two who had been the subject of wide-spread, indeed international, pleas of clemency. The priest spoke of his visits with Glass and testified that in his opinion Glass was truly remorseful for the

murders, as well as the fact that the "main-line" churches oppose the death penalty, alluding to a difference in the Old Testament and New Testament in that regard. The court excluded testimony about the latter, and some testimony of the prison expert supported by neither statistics nor her personal knowledge. But the record does not support Glass's complaint that the trial court refused to allow relevant evidence which tended to establish a reason for mitigating the severity of the punishment for the offense. This final contention lacks merit.

For these reasons, the application for a certificate of probable cause and for stay of execution is DENIED, and the appeal is DISMISSED.